1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ERIC SABATINI,

        Plaintiff,

        vs.

VEONEER, INC., ROBERT W. ALSPAUGH, JAN CARLSON, JAMES M. RINGLER, MARK DURCAN, JONAS SYNNERGREN, MARY LOUISE CUMMINGS, KAZUHIKO SAKAMOTO, and WOLFGANG ZIEBART,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Eric Sabatini ("Plaintiff"), on behalf of himself and all others similarly

situated, upon information and belief, including an examination and inquiry conducted

- 1 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Veoneer, Inc. ("Veoneer" or the "Company") and the members of Veoneer's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Veoneer will be acquired by Magna International Inc. ("Magna"), through Magna's subsidiary 2486345 Delaware Corporation ("Acquisition Sub") (the "Proposed Transaction").

2.     On July 23, 2021, Veoneer and Magna issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated July 22, 2021 (the "Merger Agreement") to sell Veoneer to Magna.   Under the terms of the Merger Agreement, Veoneer stockholders will receive $31.25 in cash for each share of Veoneer common stock they own.   The Proposed Transaction is valued at approximately $3.8 billion.

3.     On September 9, 2021, Veoneer filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.   The Proxy Statement, which recommends that Veoneer stockholders vote in favor of the Proposed Transaction,

- 2 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

omits or misrepresents material information concerning, among other things: (i) the financial projections for Veoneer; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Rothschild & Co US Inc. ("Rothschild"); and (iii) Morgan Stanley's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Veoneer's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.     The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates manufacturing facilities in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Veoneer.

9. Defendant Veoneer is a Delaware corporation, with its principal executive offices located at Klarabergsviadukten 70, Section C6, Box 13089, SE-103 02, Stockholm, Sweden and manufacturing facilities located in Goleta, California. The Company is a worldwide leader in automotive technology. Veoneer's common stock trades on the New York Stock Exchange under the ticker symbol "VNE."

10. Defendant Robert W. Alspaugh ("Alspaugh") has been a director of the Company since June 29, 2018.

11. Defendant Jan Carlson ("Carlson") has been Chairman of the Board since June 29, 2018 and President, Chief Executive Officer ("CEO"), and a director of the Company since April 1, 2018.

- 4 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

12.     Defendant James M. Ringler ("Ringler") has been a director of the Company since April 1, 2018.

13.     Defendant Mark Durcan ("Durcan") has been a director of the Company since June 29, 2018.

14.     Defendant Jonas Synnergren ("Synnergren") has been a director of the Company since June 29, 2018.

15.     Defendant Mary Louise Cummings ("Cummings") has been a director of the Company since June 29, 2018.

16.     Defendant Kazuhiko Sakamoto ("Sakamoto") has been a director of the Company since June 29, 2018.

17.     Defendant Wolfgang Ziebart ("Ziebart") has been a director of the Company since June 29, 2018.

18.     Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Magna is a global automotive supplier that has complete vehicle engineering and contract manufacturing expertise, as well as product capabilities which include body, chassis, exterior, seating, powertrain, active driver assistance, electronics, mechatronics, mirrors, lighting and roof systems.  Magna also has electronic and software capabilities across many of these areas.  Magna's common stock trades on the New York Stock Exchange under the ticker symbol "MGA."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

20.     Acquisition Sub is a Delaware corporation and an indirect, wholly owned subsidiary of Magna.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Incorporated in 2017, the Company functions as a holding corporation and owns two principal subsidiaries, Veoneer AB and Veoneer US, Inc.  Veoneer is a global technology leader in the design, development, manufacture and sale of automotive safety electronics.  Veoneer's ambition is to be a leading system supplier for Advanced-Driver Assistance Systems ("ADAS") and Highly Automated Driving ("HAD") solutions, which it refers to as "Collaborative Driving," and Automated Driving ("AD") solutions, and to be recognized as a market leader in automotive safety electronics products.

22.     As of December 31, 2020, Veoneer has six manufacturing sites, operates in 11 countries and its customers include most of the world's largest car manufacturers.  Veoneer's sales in 2020 were $1.37 billion, approximately 45% of which consisted of Active Safety products, approximately 49% of which consisted of Restraint Control Systems and approximately 6% of which consisted of Brake Systems products and other brake control electronic control units ("ECUs").

23.     On July 23, 2021, Veoneer announced its second quarter 2021 financial results.  Net sales were $398 million, increased from $184 million in the second quarter of 2020.  Operating cash flow was a loss of $69 million, improved from a loss of $107

- 6 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

million in the second quarter of 2020.  Reflecting on the Company's results and looking towards the future, defendant Carlson stated:

> For the quarter, I was pleased with Veoneer's performance during a challenging period.  Despite the uncertainty created by supply disruptions, the COVID-19 pandemic and sequentially lower light vehicle production leading to lower sales, Veoneer improved its gross profit and operating loss as well as its cash flow.  These improvements were achieved through the progress of our on-going market adjustment initiatives, and we expect continuous progress throughout 2021 as sales increases and the results of the efficiency programs are expected to keep our costs at near planned levels.
>
> Planned launches are on track, although the positive volume effects are somewhat held back by the short-term fluctuations in OEM demand. During the quarter we had five key launches, four out of which were Active Safety launches that will start to contribute to our expected strong organic sales growth in the quarters and years to come.  The launch of the Geely EMA was especially significant for Veoneer as we are a full system and integration supplier to the vehicle.  This is a flagship program for our Company, highlighting the strength of our vision, radar, ECU and software capabilities.  It further highlights the current momentum we have

- 7 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

in China where among other customer wins we signed yet another new customer for our vision technology.

Our order intake developed better in the quarter than what we expected, due in part to new opportunities that we were able to capture and partly orders expected in the third quarter materializing already in the second quarter.  We won orders across most products areas, highlighting the strength of our current product portfolio.  With this positive development we are well on track to reach higher order levels in 2021 as compared to 2020.

The first Arriver perception and drive policy software running on the Qualcomm Snapdragon Ride platform has now been demonstrated in-vehicle to potential customers with encouraging initial feedback, a true milestone.  During the quarter the Volvo XC40 Recharge, which runs the current generation of Arriver software, was picked as "Top Safety Pick+" by the Insurance Institute for Highway Safety in the United States, another proof point that we are on track to create a leading global challenger for Active Safety systems and software.

These developments are the result of the strong execution of the entire Veoneer team and I would like to take this opportunity to thank all of Veoneer's associates for their focus and persistence in these volatile times.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Proposed Transaction**

24.    On July 23, 2021, Veoneer and Magna issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

AURORA, Ontario, Canada July 22, 2021 and STOCKHOLM, Sweden July 23, 2021 – Magna International Inc. (TSX: MG; NYSE: MGA) and Veoneer, Inc. (NYSE: VNE and SSE: VNE SDB) today announced that they have entered into a definitive merger agreement under which Magna will acquire Veoneer, a leader in automotive safety technology. Pursuant to the agreement, Magna will acquire all of the issued and outstanding shares of Veoneer for $ 31.25  per share in cash, representing a total value of $3.8 billion, and an enterprise value of $3.3 billion, inclusive of Veoneer's cash, net of debt and other debt-like items as of March 31, 2021.

The acquisition builds on Magna's strengths and positions the company's advanced driver assistance systems ("ADAS") business as a global leader with comprehensive capabilities.  The acquisition also expands Magna's ADAS business with major customers and provides access to new customers and regions, including in Asia.  Magna expects to operate Veoneer's ArriverTM sensor perception and drive policy software platform as an independent business unit, consistent with Veoneer's

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

current practice.  In addition, Magna will acquire Veoneer's leading global position in restraint control systems.

"Veoneer's complementary technology offerings, customer base, and geographic footprint make it an excellent fit with our ADAS business, and the acquisition strengthens our global engineering and software development talent base," said Magna CEO Swamy Kotagiri.  "We expect the combined entity to be an industry leader in active safety solutions, to enhance its position in complete ADAS systems, and to be well-positioned for the transition towards higher levels of autonomy.  The acquisition is also consistent with our go-forward strategy to accelerate investment in high-growth areas."

Following the closing of the transaction, Veoneer will be combined with Magna's existing ADAS business and integrated into Magna's electronics operating unit.  The combined business will build upon relationships with both organizations' automotive customers, suppliers and technology partners to develop best-in-class products.

Jan Carlson, Veoneer's Chairman, President and CEO said: "This is a compelling transaction for all our stakeholders.  It will deliver significant and immediate value to Veoneer stockholders through an attractive

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

premium to our trading price, and provide new opportunities for our employees to join one of the most capable suppliers in the mobility space. In addition, combining forces with Magna will allow the combined business to elevate its status as a full-systems ADAS supplier, which should benefit our customers, supplier partners and ultimately consumers."

Mr. Kotagiri added, "We have a great deal of respect for Veoneer's team around the world and their culture of innovation and creativity.  We look forward to welcoming Veoneer's employees into our global Magna family and are confident that together we will be able to achieve great results and move faster to address the growing ADAS market."

**HIGHLIGHTS OF THE TRANSACTION**

- Creates a global leader in ADAS with pro forma 2020 ADAS sales of $1.2 billion and capabilities across:

  o Key component categories, including camera, radar, LiDAR and domain controllers; and

  o Software features/functions, including perception and drive policy.

- 11 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Enhances Magna's ADAS systems capabilities and adds significant engineering and software competency, including ArriverTM sensor perception and drive policy software.

- The complementary nature of the two businesses is expected to result in greater ADAS content per vehicle for Magna driven by the opportunity to offer more complete and integrated ADAS systems, inclusive of software.

- Strengthens Magna's customer and geographic diversification in ADAS. The combined entity will have a well-diversified customer base. In addition, Veoneer's business and footprint in Asia builds on Magna's customer and geographic bases in this important region.

- Expect to realize annual run-rate synergies of approximately $100 million by 2024.  These savings are incremental to Veoneer's previously announced market adjustment initiatives.

- The all-cash transaction will allow Magna to maintain a strong balance sheet with an expected adjusted debt to adjusted EBITDA ratio slightly above the high end of Magna's1.0 to 1.5 target range at closing.

**TRANSACTION DETAILS AND TIMING**

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The transaction has been unanimously approved by the Veoneer and Magna boards of directors, and Veoneer's board of directors unanimously recommends that Veoneer stockholders approve the proposed merger and merger agreement.  In addition, Veoneer stockholders AMF, Cevian, AP4 and Alecta, which collectively represent approximately 40% of Veoneer's outstanding shares of common stock, have either entered into support agreements with Magna or provided indications of support, pursuant to which they have agreed, among other things and subject to certain conditions, to vote their shares of Veoneer common stock in favor of the transaction.  A special meeting of Veoneer's stockholders will be convened in connection with the transaction as soon as practicable after the mailing to Veoneer's stockholders of the proxy statement in connection with the merger.  The transaction is expected to close near the end of 2021, subject to the approval of Veoneer's stockholders, certain regulatory approvals and other customary closing conditions.  The transaction is not subject to any financing conditions.

Citi serves as financial advisor and Sidley Austin LLP serves as legal counsel to Magna. Rothschild & Co and Morgan Stanley serve as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP serves as legal counsel to Veoneer.

- 13 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**Insiders' Interests in the Proposed Transaction**

25.     Veoneer insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Veoneer.

26.     Notably, pursuant to the Merger Agreement, all outstanding Company options, restricted stock units ("RSUs"), and performance-based restricted stock units ("PSUs") will vest and convert into the right to receive the Merger Consideration if a Company insider is terminated on or immediately after the merger.  The following table summarizes the value of Company options, RSUs, and PSUs that Company insiders stand to receive if they are terminated upon closing of the merger:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Company Options[1] | | Company RSUs[2] | | Company PSUs[2] | |
|---|---|---|---|---|---|---|
| | Shares (#) | Value ($) | Shares (#) | Value ($) | Shares (#) | Value ($) |
| Jan Carlson<br>President and Chief Executive Officer | 43,959 | 59,051 | 24,466 | 827,063 | 89,300 | 2,790,625 |
| Lars Sjöbring<br>EVP, Legal Affairs, General Counsel | — | — | 16,876 | 527,375 | 26,791 | 837,219 |
| Matthias Bieler<br>EVP, Vision & DMS | — | — | 20,546 | 642,063 | 33,957 | 1,061,156 |
| Robert Bisciotti<br>EVP, RCS | — | — | 12,029 | 375,906 | 10,304 | 322,000 |
| Steven Jenkins<br>EVP and Chief Technology Officer | — | — | 7,665 | 239,531 | 4,918 | 153,688 |
| Thomas Jönsson<br>EVP, Communications and Investor Relations | 5,656 | 0 | 11,866 | 370,813 | 18,823 | 588,219 |
| Mikael Landberg<br>EVP, Human Resources | — | — | 10,354 | 323,563 | 17,113 | 534,781 |
| Christer Lundström<br>EVP, Operations & Quality | — | — | 17,810 | 556,563 | 15,184 | 474,500 |
| Ray Pekar<br>Chief Financial Officer and EVP, Finance | 9,582 | 52,652 | 12,688 | 396,500 | 11,192 | 349,750 |
| Christine Rankin<br>SVP, Finance and Principal Accounting Officer | — | — | 7,617 | 238,031 | 6,413 | 200,406 |
| Christoph Schmickler<br>SVP, ADAS & ECU | — | — | 6,476 | 202,375 | 5,877 | 183,656 |
| Christopher Van Dan Elzen<br>EVP, Radar | — | — | 11,222 | 350,688 | 9,954 | 311,063 |
| Arthur Blanchford[3]<br>Former Executive Officer<br>EVP, Sales and Business Development | — | — | 22,319 | 697,469 | 36,261 | 1,133,156 |
| Steven M. Rodé[3]<br>Former Executive Officer EVP, Operations | 4,279 | 0 | 15,397 | 481,156 | 24,868 | 777,125 |
| Seven (Xi) Zhang[3]<br>Former Executive Officer EVP, Business Unit China | — | — | 8,539 | 266,844 | 6,925 | 216,406 |

27.    Moreover, if they are terminated in connection with the Proposed Transaction, Veoneer's executive officers stand to receive substantial cash severance payments, as set forth in the following table:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Cash Severance[3] ($) | Cash Salary Differential Payment for Non-Compete[4] ($) |
|---|---|---|
| Robert Bisciotti<br>EVP, RCS | 690,000 | 276,000 |
| Steven Jenkins[5]<br>EVP and Chief Technology Officer | 198,973 | 119,383 |
| Thomas Jönsson<br>EVP, Communications and Investor Relations | 488,954 | 0 |
| Mikael Landberg<br>EVP, Human Resources | 495,158 | 198,063 |
| Christer Lundström<br>EVP, Operations & Quality | 412,577 | 165,030 |
| Ray Pekar<br>Chief Financial Officer and EVP Finance | 600,000 | 240,000 |
| Christine Rankin<br>SVP, Finance and Principal Accounting Officer | — | — |
| Christoph Schmickler<br>SVP, ADAS & ECU | 374,326 | 149,729 |
| Christopher Van Dan Elzen<br>EVP, Radar | 525,000 | 210,000 |
| Arthur Blanchford[6]<br>Former Executive Officer EVP Sales and Business Development | 841,574 | 0 |
| Steve Rodé[6]<br>Former Executive Officer EVP, Operations | 654,777 | 0 |
| Seven (Xi) Zhang[6]<br>Former Executive Officer EVP Business Unit China | 725,492 | 290,196 |

28. Further, if they are terminated in connection with the Proposed Transaction, Veoneer's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Pension/ NQDC ($)[3] | Perquisite/ Benefits ($) | Total ($)[4] |
|---|---|---|---|---|---|
| Jan Carlson | 11,365,094 | 3,617,688 | — | — | 14,982,782 |
| Lars Sjöbring | 2,383,274 | 1,364,594 | — | — | 3,747,868 |
| Matthias Bieler | 1,278,623 | 1,703,219 | — | — | 2,981,842 |

- 16 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Proxy Statement Contains Material Misstatements or Omissions**

29.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Veoneer's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

30.    Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Veoneer's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Morgan Stanley and Rothschild; and (iii) Morgan Stanley's potential conflicts of interest.

*Material Omissions Concerning Veoneer's Financial Projections*

31.    The Proxy Statement omits material information regarding the financial projections for Veoneer.

32.    For example, the Proxy Statement fails to disclose the line items underlying the Company's: (i) Gross Profit; (ii) Operating Income; (iii) EBITDA; and (iv) Unlevered Free Cash Flow.

33.    The omission of this material information renders the statements in the "Projections Provided by Veoneer's Management" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Material Omissions Concerning Morgan Stanley's and Rothschild's Financial Analyses*

34.     The Proxy Statement omits material information regarding Morgan Stanley's and Rothschild's financial analyses.

35.     The Proxy Statement describes Morgan Stanley's and Rothschild's fairness opinions and the various valuation analyses they performed in support of their opinions.  However, the description of Morgan Stanley's and Rothschild's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Veoneer's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's and Rothschild's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

36.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies observed by Morgan Stanley in the analysis.

37.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the terminal values for Veoneer; (ii) quantification of the inputs and assumptions underlying the discount rate range of 10.3% to 11.8%; (iii) the Company's net debt; and (iv) the number of fully diluted shares of Company stock.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analyses, the Proxy Statement fails to disclose: (i) the price targets observed in the analyses; and (ii) the sources thereof.

39.     With respect to Rothschild's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the terminal values for Veoneer; (ii) quantification of the inputs and assumptions underlying the discount rate range of 10.5% to 12.5%; (iii) the Company's net debt; and (iv) the number of fully diluted shares of Company stock.

40.     With respect to Rothschilds' *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the premia observed for each transaction; and (ii) the sources thereof.

41.     The omission of this material information renders the statements in the "Opinions of Veoneer's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest**

42.     The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley.

43.     For example, the Proxy Statement fails to disclose the timing and nature of the past services Morgan Stanley and/or its affiliates provided to (i) Magna and/or its affiliates, including the amount of compensation Morgan Stanley received or expects to receive for providing each service; and (ii) Veoneer and/or its affiliates.

- 19 -

44.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45.     The omission of this material information renders the statements in the "Opinions of Veoneer's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Veoneer will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

47.     Plaintiff repeats all previous allegations as if set forth in full.

48.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.   It misrepresented and/or omitted material facts, including material information about Veoneer's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Morgan Stanley and Rothschild, and Morgan Stanley's potential conflicts of interest.   The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **COUNT II**

### **Claims Against the Individual Defendants for**

### **Violations of Section 20(a) of the Exchange Act**

53. Plaintiff repeats all previous allegations as if set forth in full.

54. The Individual Defendants acted as controlling persons of Veoneer within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Veoneer, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

57.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Veoneer's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Veoneer, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Veoneer stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1  Dated: September 27, 2021

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:   310/209-2348
             -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY  10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS